# Exhibit "I"

## Westport Documents

1385925-1

July 1, 2011

JKNY LLC
92nd Street Hotel Associates
c/o Mr. Jeffrey Kosow
555 Fifth Avenue, 9th Floor
New York, NY 10017

**Re: Upper East Side Marriott Courtyard**

Mr. Kosow:

This Non-Binding Summary of Terms and Conditions is to confirm the interest of WCP Investment Manager, LLC, as agent on behalf of certain funds, or an entity owned by such funds ("WCP") to acquire a defaulted first mortgage loan (the "Mortgage Loan") with an unpaid principal balance of approximately $63.0 million ("UPB") from GE Capital ("GE" or the "Seller"). The Mortgage Loan is secured by, among other things, a first lien on the land and improvements, and an assignment of rents and leases, of a Marriott Courtyard located on the Upper East Side of New York, NY (the "Project").

WCP is prepared to commit the resources required to lead the negotiation, structuring and documentation of a definitive loan purchase agreement with GE. WCP is an institutional real estate investment manager with approximately $1.0 billion in discretionary equity capital under management with specific expertise in debt restructurings and hospitality. We believe our financial capabilities, market knowledge and asset class expertise uniquely position us to recapitalize the Project.

*[Intentionally Left Blank]*

Based upon our review of the information provided to us thus far, WCP outlines below preliminary, non-binding summary terms and conditions to acquire the Mortgage Loan and recapitalize the Project.

| | |
|---|---|
| **Purchase Price:** | Not to exceed $63.0 million or 100.0% of the Mortgage Loan's UPB. It has been disclosed to WCP that since the Mortgage Loan went into default, approximately $10.0 million of interest (regular and default) and $0.5 million of penalties and fees have accrued resulting in a total claim amount of $73.5 million. WCP's offer price reflects approximately 86.0% of the total claim amount. WCP has assumed that there are no other liens or claims encumbering the Project. |
| **Borrower:** | An entity named Madison 92nd Street Associates, LLC whose ownership is comprised of Mr. John C. Lesher (8.57%), Mr. Robert Gladstone (32.17%), Ms. Lucille Gladstone (5.00%), Mr. Andrew Harris (1.00%) (each an individual), JKNY LLC (3.25%) and 92nd Street Hotel Associates (50.00%). |
| **Key Principals:** | JKNY LLC and 92nd Street Hotel Associates shall hereinafter be referred to as the "Key Principals of Borrower". |
| **Transaction Structure:** | A special purpose entity ("NewCo") will be formed by WCP and the Key Principals of Borrower to complete the proposed transaction. To determine the required equity amount, we assumed that NewCo could secure at a minimum $40.0 million of first mortgage financing (the "New Financing"); thus leaving up to $23.0 million of equity capital to be provided by the members (the "Members") of NewCo. WCP is prepared to provide 90% of this amount and the Key Principals of Borrower will be required to fund the balance. The Members will work collaboratively to obtain the New Financing on mutually agreed upon terms. If necessary, the Members will engage a mortgage broker to help procure the New Financing. |
| | WCP has reviewed the summary of indicative terms from Ladder Capital ("Ladder"), dated June 15, 2011, outlining Ladder's proposed terms for the New Financing. WCP would favor reducing the amount of the New Financing to a level that would encourage Ladder to reduce their interest rate below the approximate 8% rate they have quoted and to waive the 1% exit fee they have requested. |

**Governance:** Management and control of NewCo shall be vested in WCP as the "Managing Member." The specific duties and responsibilities of the parties shall be detailed in the operating agreement for NewCo (the "Operating Agreement") with the understanding that as the Managing Member, WCP shall have approval over NewCo's operating budget and strategy and control all major operating and capital decisions.

**Distribution of Cash Flow:** Assuming Key Principals of Borrower contribute no less than 10% of the required equity capital, all cash flow available for distribution will be distributed in the following priority:

1. First, pari-passu, to the Members until a 15.0% IRR on the original and additional capital contributions, compounded monthly, is attained by all Members;
2. Second, 100% to the Key Principals of Borrower until it has received $5,000,000 (excluding distributions received by Key Principals of Borrower per priority 1 above);
3. Third, 75.0% to WCP and 25.0% to the Key Principals of Borrower until WCP has received an 18.0% IRR, compounded monthly;
4. Fourth, 65.0% to WCP and 35.0% to the Key Principals of Borrower until WCP has received a 23.0% IRR, compounded monthly; and
5. Thereafter, 60.0% to WCP and 40.0% to the Key Principals of Borrower.

**Property Management:** The Project is currently managed by an affiliate of Marriott International ("Manager") pursuant to a management agreement dated October 7, 2002. Said agreement has been amended several times, with the most recent, Fourth Amendment, executed on July 7, 2006.

The Key Principals of Borrower have represented discontent with Manager's performance and Manager's oversight over employee matters. WCP has extensive experience in the hospitality sector and significant relationships with both the brands and independent hotel operators. WCP will assist NewCo in evaluating Manager and alternatives for the Project if deemed necessary. However, WCP has put forth this Non-Binding Summary of Terms and Conditions based on maintaining the current operational positioning of the Project.

**Conditions**
**Precedent:** The above is subject to (i) approval by WCP's Investment Committee; (ii) WCP's review and approval, in its sole discretion, and execution and delivery by all parties, of the transaction documents (i.e. Mortgage Loan acquisition-related documents, New Financing loan documents, Operating Agreement, etc.); (iii) receipt of consents acceptable to WCP from all members of Borrower or a corporate resolution granting authority of Key Principals of Borrower to enter into the proposed transaction with WCP; (iv) free and clear title except for liens related to the New Financing; and (v) WCP's review and approval, in its sole discretion, of all available and additional due diligence materials, including, but not limited to, the following:

1. Audited annual financial statements and monthly operating statements;
2. Property tax bills;
3. Updated environmental and engineering reports;
4. Title and survey;
5. Hotel management agreement;
6. Collective bargaining agreement;
7. Mortgage Loan documents;
8. Condominium association documents; and
9. Other customary items as WCP may reasonably require.

**Exclusivity/**
**Confidentiality:** From and after the execution of this Non-Binding Summary of Terms and Conditions, the Key Principals of Borrower agree to work exclusively with WCP to complete the transaction contemplated herein. The Key Principals of Borrower specifically agree not to arrange, solicit, negotiate for or otherwise in any way communicate or deal with any party (whether as principal or agent), directly or indirectly, other than WCP, in connection with the proposed transaction or any other transaction in substitution therefore (the "Exclusivity Covenant"). In the event of a breach of the Exclusivity Covenant, WCP shall have the right to receive from the Key Principals of Borrower a $250,000 break-up fee ("Break-Up Fee") for the damages incurred by WCP which the Key Principals of Borrower and WCP agree would otherwise be difficult to calculate. Notwithstanding the foregoing, WCP will not be entitled to the Break-Up Fee in the event WCP has provided the Key Principals of Borrower written notification of WCP's decision to terminate proceeding with the proposed transaction due to one or more of the following events occurring: (i) WCP is unsatisfied with the results of its due diligence; (ii) the Key

        Principals of Borrower's inability to complete the restructuring and Mortgage Loan acquisition contemplated herein; or (iii) the contemplated New Financing is not available to help consummate the transaction. Without limiting the foregoing, the Key Principals of Borrower agree to treat, and to cause their respective affiliates to treat, this Non-Binding Summary of Terms and Conditions and the provisions hereof confidentially at all times (whether or not the Key Principals of Borrower give written notice of termination of further discussions with WCP), and not to transmit any copy hereof, in whole or in part, to any Person, except for disclosures to the Key Principals of Borrower's legal counsel, accountants and other professional advisors who have a need to know such information for purposes of this transaction or to facilitate the presentation of a restructuring plan for the Project to GE or to the court deciding upon the foreclosure and/or potential bankruptcy of Borrower; provided, that the Key Principals of Borrower shall inform all such Persons of the confidential nature hereof and shall direct them to treat the same confidentially.

**Applicable Law:**   This Non-Binding Summary of Terms and Conditions and related documents shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, without regard to principles of conflicts of laws as to all matters, including, but not limited to, matters of validity, construction, effect, performance and remedies.

        Other than the Exclusivity/Confidentiality, Break-Up Fee and Applicable Law provisions contained herein, which shall be binding provisions on the Key Principals of Borrower, this Non-Binding Summary of Terms and Conditions is a non-binding expression of interest and will only become binding upon the execution by both parties of mutually acceptable transaction documents, the satisfaction of the due diligence and other conditions set forth above, and WCP's investment committee approval.

*[Intentionally Left Blank]*

We are extremely interested in successfully completing the transaction contemplated herein and look forward to working with you in this regard.

This Non-Binding Summary of Terms and Conditions is set to expire Friday, July 8, 2011 at 5:00 PM Eastern Standard Time. If the above is acceptable, please sign and return the original of this letter to Noam Sheps.

Sincerely,

WCP Investment Manager, LLC, as agent
on behalf of certain funds, or an
entity owned by such funds

By:_____        By:_____
Marc Porosoff                      Jordan Socaransky
Principal & General Counsel        Principal

AGREED & ACCEPTED AS SET FORTH ABOVE:

The Key Principals of Borrower
JKNY LLC
92nd Street Hotel Associates

By:_____

Name:
Title:

Westport Capital Partners LLC
40 Danbury Road
Wilton, CT 06897
203 429 8600 phone
203 429 8599 fax

July 21, 2011

92nd Street Hotel Associates LLC
c/o Mr. Michael Fischer
58 East 79th Street
5th Floor
New York, NY 10075

JKNY LLC
c/o Mr. Jeffrey Kosow
61 Broadway
PO 1358
New York, NY 10028

**Re: Upper East Side Marriott Courtyard**

Messrs. Fischer & Kosow:

This Summary of Terms and Conditions is to confirm the interest of WCP Investment Manager, LLC, as agent on behalf of certain funds, or an entity owned by such funds ("WCP") to acquire a defaulted first mortgage loan (the "Mortgage Loan") with an unpaid principal balance of approximately $63.0 million ("UPB") from GE Capital ("GE" or the "Seller"). The Mortgage Loan is secured by, among other things, a first lien on the land and improvements, and an assignment of rents and leases, of a Marriott Courtyard located on the Upper East Side of New York, NY (the "Project").
WCP is prepared to commit the resources required to lead the negotiation, structuring and documentation of a definitive loan purchase agreement with GE. WCP is an institutional real estate investment manager with approximately $1.0 billion in discretionary equity capital under management with specific expertise in debt restructurings and hospitality. We believe our financial capabilities, market knowledge and asset class expertise uniquely position us to recapitalize the Project.

*[Intentionally Left Blank]*

Based upon our review of the information provided to us thus far, WCP outlines below preliminary summary terms and conditions to acquire the Mortgage Loan and recapitalize the Project.

**Purchase Price:** Not to exceed $63.0 million (100.0% of the Mortgage Loan's UPB). It has been disclosed to WCP that since the Mortgage Loan went into default, approximately $11.0 million of interest (regular and default) has accrued resulting in a total claim amount of approximately $74.0 million. WCP's offer price reflects approximately 85.0% of the total claim amount. WCP has assumed that there are no other liens or claims encumbering the Project.

**Current Owner:** An entity named Madison 92nd Street Associates, LLC which is comprised of Mr. John C. Lesher (8.57%), Mr. Robert Gladstone (32.17%), Ms. Lucille Gladstone (5.00%), Mr. Andrew Harris (1.00%) (each an individual), JKNY LLC (3.25%) and 92nd Street Hotel Associates LLC (50.00%) (collectively, the "Members of Current Owner").

**Key Principals:** 92nd Street Hotel Associates LLC and JKNY LLC shall hereinafter be referred to as the "Key Principals of Borrower".

**Transaction Structure:** A special purpose entity ("NewCo") will be formed by WCP and the Key Principals of Borrower (each a member and collectively the "Members") to complete the proposed transaction. To determine the required equity amount, we assumed that NewCo could secure, at a minimum, $40.0 million of first mortgage financing (the "New Financing"); thus leaving up to $23.0 million of equity capital to be provided by the Members. WCP is prepared to provide 90% of this amount and the Key Principals of Borrower will be required to fund the balance. The Members will work collaboratively to obtain the New Financing on mutually agreed upon terms. If necessary, the Members will engage a mortgage broker to help procure the New Financing.

WCP has reviewed the summary of indicative terms from Ladder Capital ("Ladder"), dated June 15, 2011, outlining Ladder's proposed terms for the New Financing. WCP would favor reducing the amount of the New Financing to a level that would encourage Ladder to reduce their interest rate below the approximate 8% rate they have quoted and to waive the 1% exit [fee they have requested]

Initials _____  _____  _MF_  _____
           Kosow    Taic    Porosoff  Sugarinsky

All parties will endeavor to structure the transaction in a manner that will allow for favorable tax treatment. In that effort, Key Principals of Borrower and WCP will analyze continued use of the Madison 92nd Street Associates, LLC entity which will require an evaluation of existing and contingent liabilities associated with the Madison 92nd Street Associates, LLC entity. WCP recommends that Key Principals of Borrower, at its own expense, seek tax counsel to evaluate the potential tax liabilities associated with the proposed transaction.

**Governance**: Management and control of NewCo shall be vested in WCP as the "Managing Member." Key Principals of Borrower will be responsible for presenting annual business plans and budgets to NewCo for WCP's approval. The specific duties and responsibilities of the Members shall be detailed in the operating agreement for NewCo (the "Operating Agreement") with the understanding that as the Managing Member, WCP shall have approval over NewCo's operating budget and strategy and control all major operating and capital decisions. Disputes pertaining to major decisions, including disputes regarding the Project's sale, between the Members shall be resolved through a buy/sell provision.

*[Intentionally Left Blank]*

**Distribution of**
**Cash Flow:** Assuming Key Principals of Borrower contribute no less than 10% of the required equity capital, all cash flow available for distribution will be distributed in the following priority:

1. First, pari-passu, to the Members until a 15.0% IRR on the original and additional capital contributions, compounded monthly, is attained by all Members;
2. Second, 100.0% to the Key Principals of Borrower until it has received $4.0 million (excluding distributions received by Key Principals of Borrower per priority 1 above);
3. Third, 50.0% to the Key Principals of Borrower and 50.0% to the Members until the Key Principals of Borrower have received an additional $4.0 million (excluding distributions received by Key Principals of Borrower per priority 1 and 2 above);
4. Fourth, 75.0% to the Members and 25.0% to the Key Principals of Borrower until WCP has received an 18.0% IRR, compounded monthly;
5. Fifth, 65.0% to the Members and 35.0% to the Key Principals of Borrower until WCP has received a 25.0% IRR, compounded monthly; and
6. Thereafter, 55.0% to the Members and 45.0% to the Key Principals of Borrower.

**Property**
**Management:** The Project is currently managed by an affiliate of Marriott International ("Manager") pursuant to a management agreement dated October 7, 2002. Said agreement has been amended several times, with the most recent, Fourth Amendment, executed on July 7, 2006.
The Key Principals of Borrower have represented discontent with Manager's performance and Manager's oversight over employee matters. WCP has extensive experience in the hospitality sector and significant relationships with both the brands and independent hotel operators. WCP will assist NewCo in evaluating Manager and alternatives for the Project if deemed necessary. However, WCP has put forth this Summary of Terms and Conditions based on maintaining the current operational positioning of the Project.

Initials _____ _____ __M|__ _____
              Tuie    Kosow   Porossee  Socuronsky

**Conditions**
**Precedent:** The above is subject to (i) approval by WCP's Investment Committee; (ii) WCP's review and approval, in its sole discretion, and execution and delivery by all parties, of the transaction documents (i.e. Mortgage Loan acquisition-related documents, New Financing loan documents, Operating Agreement, etc.); (iii) receipt of a corporate resolution acceptable to WCP in its sole discretion granting authority to Key Principals of Borrower to enter into the proposed transaction with WCP based on a vote of no less than 51% of the Members of Current Owner or such greater amount as is required by Current Owner's organizational or operative documents; (iv) free and clear title except for liens related to the New Financing; and (v) WCP's review and approval, in its sole discretion, of all available and additional due diligence materials, including, but not limited to, the following:

1. Audited annual financial statements and monthly operating statements;
2. Property tax bills;
3. Updated environmental and engineering reports;
4. Title and survey;
5. Hotel management agreement;
6. Collective bargaining agreement;
7. Mortgage Loan documents;
8. Condominium association documents; and
9. Other customary items as WCP may reasonably require.

*[Intentionally Left Blank]*

**Exclusivity/**
**Termination &**
**Confidentiality:** From and after the execution of this Summary of Terms and Conditions, the Key Principals of Borrower agree to work exclusively with WCP to complete the transaction contemplated herein. The Key Principals of Borrower specifically agree not to arrange, solicit, negotiate for or otherwise in any way communicate or deal with any party (whether as principal or agent), directly or indirectly, other than WCP, in connection with the proposed transaction or any other transaction in substitution therefore regarding the Project, the Current Owner or the Mortgage Loan (the "Exclusivity Covenant"). For clarification, the Key Principals of Borrower are not prohibited from communicating with Ladder as the prospective provider of the New Financing; it being understood that WCP will participate in continued negotiations with Ladder or any other prospective provider of New Financing. Furthermore, Key Principals of Borrower shall not enter into a commitment with Ladder or any other prospective provider for New Financing without WCP's consent, such consent not to be unreasonably withheld.

In the event of a breach of the Exclusivity Covenant or a termination of this Summary of Terms and Conditions by the Key Principals of Borrower for any reason, WCP shall have the right to receive from the Key Principals of Borrower a $250,000 break-up fee ("Break-Up Fee") plus all of WCP's reasonable out of pocket expenses (not to exceed $100,000) as liquidated damages for the damages incurred by WCP which the Key Principals of Borrower and WCP agree would otherwise be difficult to calculate. WCP agrees that upon receipt of the Break-Up Fee and expenses, WCP will release Key Principals of Borrower from further claims resulting from a breach of the Exclusivity Covenant. Furthermore, receipt of the Break-Up Fee and expenses will render this Summary of Terms and Conditions null and void.
Notwithstanding the foregoing, WCP will not be entitled to the Break-Up Fee in the event WCP has provided the Key Principals of Borrower written notification of WCP's decision to terminate proceeding with the proposed transaction due to one or more of the following events occurring: (i) WCP is unsatisfied with the results of its real estate-related due diligence which shall be completed no later than September 30, 2011; (ii) the Key Principals' inability to complete the restructuring and Mortgage Loan acquisition contemplated herein; or (iii) the contemplated New Financing is not available to help consummate the transaction. Without limiting the foregoing, the Key Principals of Borrower agree to treat, and to

cause their respective affiliates to treat, this Summary of Terms
and Conditions and the provisions hereof confidential at all times, except as may be necessary
with respect to any disputes or litigation with the other Members of the Current Owner, or for
purposes of a bankruptcy proceeding involving the ~~borrower~~ Current Owner.
(whether or not the Key Principals of Borrower give written notice
of termination of further discussions with WCP or if the Break-Up
Fee and expenses were paid to WCP in the event of a breach of the
Exclusivity Covenant), and not to transmit any copy hereof, in
whole or in part, to any Person, except for disclosures to the Key
Principals of Borrower's affiliates, employees, legal counsel,
accountants and other professional advisors who have a need to
know such information for purposes of this transaction or to
facilitate the presentation of a restructuring plan for the Project to
GE or to the court deciding upon the foreclosure and/or potential
bankruptcy of Current Owner or with respect to any disputes or
litigation with the other Members of the Current Owner; provided,
that the Key Principals of Borrower shall inform all such Persons
of the confidential nature hereof and shall direct them to treat the
same confidentially.

**Applicable Law:** This Summary of Terms and Conditions and related documents
shall be governed by, and construed and interpreted in accordance
with, the laws of the State of New York, without regard to
principles of conflicts of laws as to all matters, including, but not
limited to, matters of validity, construction, effect, performance
and remedies.
Other than the Exclusivity/Termination & Confidentiality, Break-
Up Fee and Applicable Law provisions contained herein, which
shall be binding provisions on the Key Principals of Borrower, this
Summary of Terms and Conditions is a non-binding expression of
interest and will only become binding upon the execution by both
parties of mutually acceptable transaction documents, the
satisfaction of the due diligence and other conditions set forth
above, and WCP's investment committee approval.

*[Intentionally Left Blank]*

We are extremely interested in successfully completing the transaction contemplated herein and look forward to working with you in this regard.
This Summary of Terms and Conditions is set to expire Friday, July 22, 2011 at 5:00 PM Eastern Daylight Time. If the above is acceptable, please sign and return the original of this letter to Noam Sheps.

Sincerely,

WCP Investment Manager, LLC, as agent
on behalf of certain funds, or an
entity owned by such funds

By: _____
Marc Porosoff
Principal & General Counsel

By: _____
Jordan Socaransky
Principal

AGREED & ACCEPTED AS SET FORTH ABOVE:

Key Principals of Borrower
92nd Street Hotel Associates LLC
By: _____
Name: Louis Taic
Title: Managing Member

JKNY LLC
By: _____
Name: Jeffrey Kosow
Title: Managing Member



# Marriott 92nd Street

## Summary of Certain Indicative Terms –6/15/2011

| | |
|---|---|
| **Loan Amount:** | $55,000,000 ($243,363/key). |
| **Property Location:** | 410 East 92nd Street, New York, New York |
| **Loan Purpose:** | Refinance and reorganize out of bankruptcy. |
| **Security:** | First mortgage. |
| **Key Principal:** | Individual(s) acceptable to Lender. |
| **Recourse:** | Non-recourse to Key Principals except for customary non-recourse carve-outs. |
| **Max. LTV/LTC:** | 65% |
| **Term:** | 2 years. |
| **Amortization:** | Interest only. |
| **Interest Rate:** | The greater of (i) 30-day LIBOR plus 7.00% and (ii) 8.00%. |
| **Origination Fee:** | 1% of the Loan Amount. |
| **Exit Fee:** | 1% of the Loan Amount. The Exit Fee shall be waived if the Loan is refinanced by Ladder Capital. |
| **PIP Reserves:** | At Closing [$3 million] will be funded into a PIP reserve for required work at the property. |
| **Debt Service Reserve:** | At Closing [$2 million] will be funded into a Debt Service reserve to cover any expected shortfalls due to reflagging shutdown |
| **Minimum Equity Requirement:** | At Closing the Borrower must contribute not less than $15 million of fresh cash equity into the deal. |
| **New Franchise:** | At or prior to Closing the Borrower shall have entered into a new franchise agreement with a new franchisor reasonably acceptable to Lender. |
| **Cash Management:** | Hard "hotel style" lockbox with in-place cash management. |
| **Prepayment:** | The loan may be prepaid (subject to the Exit Fee) commencing on the 13th month of the Loan term. |

This Summary of Certain Indicative Terms has been prepared for the sole purpose of discussing an opportunity to make a loan and to set forth certain terms on which such transaction would be conditioned. This is not a commitment by Ladder Capital to provide financing to any party in any amount, whether described herein or otherwise. Neither party hereto will have any obligation to the other party with respect to the proposed transaction until execution of definitive and binding financing documentation between the parties in a form acceptable to each of the parties. Notwithstanding anything else contained herein, the closing of the proposed transaction is expressly subject to the approval of Ladder Capital investment committee.