OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Adam H. Friedman
Eric Goldberg
Fredrick J. Levy
212.451.2300

*Counsel to Robert Gladstone, Lucille Gladstone,
John Lesher and Andrew Harris*

UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MADISON 92nd STREET ASSOCIATES, LLC, | Case No. 11-13917 (SMB) |
| Debtor. | |

**MOVANTS' REPLY TO THE DEBTOR'S OPPOSITION TO THE MOTION FOR DISMISSAL, APPOINTMENT OF A CHAPTER 11 TRUSTEE OR <u>APPOINTMENT OF A CHAPTER 11 EXAMINER</u>**

Robert Gladstone ("Gladstone"), as Co-Managing Member of the above-captioned debtor and debtor-in-possession (the "Debtor"), Lucille Gladstone ("L. Gladstone"), John Lesher ("Lesher"), and Andrew Harris ("Harris") as members of the Debtor (Gladstone, L. Gladstone, Lesher, and Harris together referred to as "Movants") hereby reply to the Debtor's Opposition to Motion for Dismissal, Appointment of a Chapter 11 Trustee or Examiner (the "Opposition," Docket No. 32) to Movants' motion (the "Motion," Docket No. 14) for entry of an order dismissing the case pursuant to 28 U.S.C. § 1112(b), or, in the alternative, appointing a chapter

11 trustee, pursuant to 28 U.S.C. §1104(a)(1) and (2), or a chapter 11 examiner, pursuant to 28 U.S.C. §1104(c)(1) and respectfully state as follows:[1]

**There is Significant Support for the Motion**

1. To date, two of the Debtor's largest general unsecured creditors and Courtyard Marriott, the Hotel's manager, have gone on record in support of that prong of the Motion which seeks appointment of a chapter 11 trustee. Each has first-hand knowledge of the deadlock and acrimony that afflicts the Debtor and now undermines its ability to function in chapter 11.

2. *Courtyard Management Corporation*, a subsidiary of Marriott International Inc. ("Courtyard"), has filed a Statement supporting appointment of a chapter 11 trustee because based upon Courtyard's experience with the Debtor "internal disagreement among the members … has impeded the Debtor's ability to perform its duties as owner of the Hotel …." (Docket No. 26, p.2) Courtyard also observes that: "The continuing deadlock among the members has apparently stalled the Debtor's internal decision-making process." (*Id.* at ¶ 6)

3. *Rivkin Radler LLP*, the Debtor's prepetition bankruptcy and sale counsel and its seventh largest general unsecured creditor, has filed a Partial Joinder by which it supports the appointment of a chapter 11 trustee as "the only party that can objectively navigate the various issues in this case with the best interest of creditors in mind." (Docket No. 19, ¶ 7)

4. *Rosenberg Calica & Birney LLP*, prepetition counsel to the Debtor, as well as to Co-Managing Member Louis Taic personally, and the Debtor's second largest general unsecured creditor, has filed a Partial Joinder by which it "agrees with the legal and factual arguments set forth in the Motion to the extent that the Movants seek the appointment of a Chapter 11 Trustee."

---

[1] Unless otherwise defined herein, all of the capitalized terms utilized herein have the same meaning ascribed to them in the Motion.

1405838-1

(Docket No. 20, ¶ 9). This firm represented Taic in the negotiation of the Fifth Amendment to the Operating Agreement.

5. In addition, upon information and belief, other significant creditors may appear at the hearing in support of the Motion insofar as it seeks appointment of a chapter 11 trustee.

**The Removal of Robert Gladstone and Appointment of JKNY as Co-Managing Member Was Improper Under the Debtor's LLC Operating Agreement**

6. The Opposition asserts that it only needs a simple majority to remove and replace Gladstone as Co-Managing Member and to take any action. This is incorrect for two reasons. First, the Opposition does not accurately read section 2 of the Fifth Amendment. (The Fifth Amendment is attached to the Motion as Ex. D). The Opposition reads only one sentence of the relevant provision to the exclusion of the other sentences, thereby eliminating the entire concept of "equal Co-Managing Members" and the mandatory requirement of their "joint" consent, which is the essence of this LLC. Second, the Opposition ignores the fact that "actions" which affect and pertain to the relationship among the members can only be changed by further amendment to the Operating Agreement agreed to by all members -- not by a simple majority. The Operating Agreement and its amendments must be read as an entire agreement.

Section 2 of the Fifth Amendment Read in its Entirety Requires Two Levels of Approvals: *Both* 51% of the Members **and** Consent of Each of the Two Co-Managing Members

7. Section 2 of the Fifth Amendment does not say simply that 51% consent is sufficient for "any and all actions", as the Opposition asserts. It states as follows:

> The Members do hereby agree and do hereby appoint Gladstone and 92nd [Hotel Associates] to be designated and for each [to] have the title **as equal Co-Managing Members who shall jointly execute contracts and documents** provided same have been first approved by Members having at least fifty-one (51%) of the Percentage Interest in the Company. All actions, contracts, documents and agreements on behalf of the Company may only be

3

signed after Members having at least fifty-one (51%) of the Percentage Interest of the Company have approved same **and if the Co-Managing Members wish to sign same they may only do so jointly**. **Neither Co-Managing Member shall have any authority to execute, on behalf of the Company, any document, agreement or check by itself.** (Fifth Amendment, § 2, Motion, Ex. D, emphasis supplied)[2]

8. Read completely, section 2 of the Fifth Amendment, provides that decisions and actions require <u>both</u> 51% Percentage Interest consent <u>and</u> joint consent of both Co-Managing Members. Accordingly, Gladstone's removal and the instant chapter 11 filing requires his consent.[3]

The Co-Managing Members Can Only Be Removed or Replaced
<u>By Amendment to the Operating Agreement Agreed to By All of the Members</u>

9. The Opposition asserts that the "any and all actions and decisions" of section 2 of the Fifth Amendment includes almost every action members can take regarding the Debtor's governance and structure including removal and replacement of the Co-Managing Members and to argue otherwise is a "stretch". If the Opposition is correct, then a simple majority can make any change it wants to the Operating Agreement. A simple majority could adjust members Percentage Interests, divest a member of its interest, admit new members, change the purpose of the Debtor, change the ascribed allocation of profits, etc. This is inconceivable as a matter of law and logic and contravenes the practice of the members of the Debtor.

10. The Opposition's invocation of the "any and all actions and decisions" in section 2 of the Fifth Amendment is misplaced. Section 2 specifically refers to actions and decisions "of the Company". Replacement of a Co-Managing Member, like the other actions described above,

---

[2] Part of the above was quoted in paragraph 24 of the Motion but was mistakenly ascribed to section 2 of the Second Amendment.
[3] It is notable that Rosenberg Calica & Birney LLP, the firm representing Hotel Associates in the negotiation of the Fifth Amendment and whose attorney actually drafted the final version of section 2, supports the Motion and "agrees with the legal and factual arguments set forth in the Motion…."

is not an action "of the Company" but rather, it is an action of the members. Indeed, our opponents knew this – why else did they call a meeting of the members to attempt to replace Gladstone as Co-Managing Member?

11.  The Opposition asserts that the Operating Agreement nowhere provides a procedure for the appointment of managing members. However, that also does not support the Opposition's position. To the contrary, in every instance of this Debtor's existence (except for the current instance) when a Manager or Co-Manager was appointed, it was done by amendment, which requires unanimity of all members, not a mere 51%.

12.  When the members wished to change the Debtor's governance by appointing Gladstone and Hotel Association equal Co-Managing Members, thereby modifying both the Original Operating Agreement and the Second Amendment, they did so by amendment, the Fifth Amendment approved by all of the members. This appointment can only be modified by adherence to Section 10 of the Fifth Amendment, which requires that it can only be "modified, changed, amended, or supplemented by a written agreement signed by the parties hereto."[4] There is no other mechanism. Now, in their haste to break the deadlock in their favor, Hotel Associates and JKNY have ignored and violated section 10 of the Fifth Amendment which clearly requires unanimity of all members, not 51% as the opposition alleges.

---

[4] The Opposition dismisses the amendment provisions of the Operating Agreement as merely a "miscellaneous" provision. In reality, the Opposition asks this Court to render these inconvenient sections, repeated in the amendments, meaningless or simply to delete them. Section 10 of the Fifth Amendment is a separately numbered and titled section. The Fifth Amendment must be read in its entirety to implement this section as much as any other section of the Amendment.

5

### By Reason of Its Limited Decision-Making Authority Under the Admission Agreement, JKNY May Not Serve as a Co-Managing Member

13.     As shown above, all actions and decisions of the Debtor require the "joint" consent of its two Co-Managing Members and many actions (such as amending the Operating Agreement) require unanimity.  It is also undeniable that JKNY's authority is almost completely circumscribed.  The Opposition ignores these limitations and their impact on JKNY's ability to serve as a Co-Managing Member and take the actions it took.

14.     Section 1 of the Admission Agreement by which JKNY was admitted as a member of the Debtor provides that JKNY "**agrees that it shall have no authority to make any decisions on behalf of the Company**".  (emphasis supplied) (The Admission Agreement is attached to the Motion as Ex. C).  It is inconceivable that a member who "shall have no authority to make any decisions on behalf of the Company" on one day could on the next day become its Co-Managing Member and replace Gladstone.  Such a reading not only renders the terms of the Admission Agreement meaningless, it defies common sense.

15.     Pursuant to § 4 of the Admission Agreement, JKNY's inability "to make any decisions" could only be altered by modification, which requires "the written agreement of all the parties hereto."  Gladstone and Lesher, the counter parties to the Admission Agreement, never consented to such a modification.

16.     JKNY is even further incapacitated.  Section 1 of the Admission Agreement limits JKNY's participation in the Debtor's governance by also providing that JKNY "waives its rights of approval regarding Sections 6.4, 8.2(b) and (d), and 9.2 of the [Original] Operating Agreement."

17.     The section 6.4 rights waived by JKNY include the right to vote on matters that require 100% member consent as follows:  (a) knowingly acting in contravention of the

6

Operating Agreement, (b) subjecting other Members to personal liability, (c) admit new Members or (d) requiring additional capital contributions. Thus, JKNY as a Co-Managing Member cannot provide its consent on any of these crucial matters. Yet, it did. By electing to file chapter 11 without Gladstone's consent, JKNY knowingly contravened the Operating Agreement and subjected Gladstone to personal liability by virtue of Gladstone's "good guy" guaranty with GECC.

18. Under the Admission Agreement, JKNY (i) cannot be eligible to be appointed a Co-Managing Member and (ii) cannot vote on any matters that subjected Gladstone (or any other member) to personal liability.[5]

### The "Debtor" is Not being Transparent

19. One final point is required. While the Opposition attempts to assuage the concerns of the Court and creditors by stating that "bankruptcy is synonymous with transparency," Taic's and Kosow's actions reveal a complete lack of transparency and a strategy of secrecy, not only withholding information from the Movants but from the estate and the Court.

20. The Debtor has filed no motions or applications. It has not sought the retention of its bankruptcy counsel (who is clearly conflicted) or the other Debtor professionals described in the Opposition. It has also not sought to retain its counsel in the litigation against Marriott in New York Supreme court which is at a crucial moment. It has not sought permission to use the cash collateral of GECC. The Debtor has not made any first day motions which could give any creditor, the US Trustee or the Court any information about what is going on here. This alone is cause to dismiss the case or appoint a trustee.

---

[5] The parties were well aware that the filing of a bankruptcy would trigger personal liability for the entire GE debt to Taic and Gladstone. It was always understood that neither one acting alone could subject the other to such personal liability unless both agreed to do so.

7

21.     In the Opposition, the Debtor, for the first time, reveals the hiring of Savills LLC to "bring in a new mortgage lender." Taic and Kosow have never informed Movants of the involvement of this entity (and Movants only learned of the other advisor, Westport, days before the filing of the Motion).

22.     Hotel Associates and JKNY have also acted in secret with regard to their intention to purchase GECC debt. They secretly signed a letter agreement, dated July 21, 2011, with Westport (attached to the Motion at Exhibit I and the Opposition at Exhibit H). This precedes the attempted removal of Gladstone as Co-Managing Member. Hotel Associates and JKNY, in secret and without any disclosure to Movants, calling themselves "Key Principals", have agreed, without authority, to purchase the GE debt at a discount with Westport, agreed to set up a newco entity (without their partners) and further agreed to split all profits with Westport, to exclusion of the Movants. This is a stunning breach of fiduciary duties owed to Movants.

23.     Because of the complete lack of transparency, the Movants were required to serve Debtor and JKNY with document requests and deposition notices (as well as a subpoena on JKNY). JKNY has not responded at all. The Debtor has refused to respond until and unless an evidentiary hearing is directed by the Court. Movants are entitled to be completely informed as to their partners' actions on behalf of the Debtor.

## Conclusion

24.     The Petition was knowingly filed without proper authority by conflicted counsel in an attempt to grab control of the Debtor's asset. That Taic and Kosow had no intention of respecting the true authority of the Co-Managing Members is illustrated by their actions with Westport. This flagrant conduct warrants Court intervention.

25. All of the foregoing reveals the reality of the Debtor. At its core, the Debtor is a partnership of Gladstone, as the founder and developer, and Taic. They are joined at hip. Neither one is empowered to act without the consent of the other. They are in all respects "equal Co-Managing Members" who can only act jointly. Taic, with the assistance of Kosow, has violated that basic tenet of the Debtor by removing Gladstone and replacing him with JKNY in contravention of the Operating Agreement. A deadlock clearly exists and a trustee is required for all of the reasons set forth in the Motion.

WHEREFORE, the Movants respectfully request entry of an order dismissing the case pursuant to 28 U.S.C. § 1112(b), or, in the alternative, appointing a chapter 11 trustee, pursuant to 28 U.S.C. §1104(a)(1) and (2), or a chapter 11 examiner, pursuant to 28 U.S.C. §1104(c)(1), and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 9, 2011

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By: /s/Adam Friedman
Adam H. Friedman
Eric Goldberg
Fredrick J. Levy
Park Avenue Tower
65 East 55th Street
New York, New York 10022
212.451.2300

*Counsel to the Movants*